[Civ. No. 4403. Second Appellate District, Division Two.—July 21, 1924.]

## EMMA J. WESTERVELT, Respondent, v. NORA McCULLOUGH, Appellant.

[1] CONTRACTS—AGREEMENT TO PROVIDE RESIDENCE—OUSTER OF AGED OWNER—DAMAGES—IMPAIRMENT OF HEALTH.—Where a party, who had agreed to pay an aged owner of a residence a stated sum for board and lodging for herself and relatives, and who knew the peculiar value of said residence to said owner, promised the latter before the expiration of the period of redemption of said residence, which had been purchased by said person at a mortgage foreclosure sale, that if she (the owner) should not sell or redeem said residence, but permit said person to obtain a sheriff's deed to the property, the agreement theretofore entered into by the parties should continue so long as said owner should live or should desire, and that said owner and her husband should continue to live in said residence, which proposal was accepted by said owner, said person obtaining her sheriff's deed, and the parties had been living together with a feeling of trust and confidence in each other, damages for the impairment of said owner's health by reason of being subsequently ousted from said residence by said person were within the contemplation of the parties and recoverable in an action based on a breach by said person of her agreement.

[2] ID. — CONTRACT RELATING TO COMFORT, HAPPINESS OR PERSONAL WELFARE—PHYSICAL SUFFERING OR ILLNESS—DAMAGES.—Whenever the terms of a contract relate to matters which concern directly the comfort, happiness or personal welfare of one of the parties, or the subject matter of which is such as directly to affect or move the affection, self-esteem, or tender feelings of that party, he may recover damages for physical suffering or illness proximately caused by its breach.

[3] ID. — VIOLATION OF AGREEMENT TO LIVE IN HOME — ACTION FOR DAMAGES—OUSTER—NATURE OF—STATEMENT IN BRIEFS—APPEAL.— In an action for damages resulting from an ouster of plaintiff by defendant from a residence, in violation of defendant's agreement that plaintiff could continue to live in said residence as long as she should live or should desire, the ouster found to have taken place by the trial court cannot be deemed on appeal to have been for-

---

1. General rule applicable to damages for breach of contract, note, 53 L. R. A. 33. See, also, 8 Cal. Jur. 820; 8 R. C. L. 421.

2. See 8 R. C. L. 459.

3. See 2 Cal. Jur. 737; 25 R. C. L. 1100.

cible and therefore tortious, where it is stated in the briefs that the ouster was not of that character, a statement to which the appellate court is bound to pay regard.

[4] ID.—PLEADING — DAMAGES — PRAYER OF COMPLAINT.—The amount stated in the prayer of a complaint for damages is equivalent to an allegation that the amount thus stated is the damage suffered by the plaintiff.

[5] ID.—MOTION UNDER SECTIONS 663 AND 663A, CODE OF CIVIL PROCEDURE—FINDINGS—APPEAL.—On a motion under sections 663 and 663a of the Code of Civil Procedure no facts can be considered except those which are embraced in the findings of the court; and upon an appeal from an order denying such a motion "any uncertainty in the findings must be resolved against the appellant, and they are to be most strongly construed in favor of respondent."

[6] ID.—AMOUNT OF JUDGMENT—FINDINGS—APPEAL—PRESUMPTIONS.— In such action, where the appeal is from an order denying a motion for another and different judgment upon the findings of the trial court under the terms of sections 663 and 663a of the Code of Civil Procedure, and the amount of the judgment awarded is greater than the least amount that the findings tentatively call for, the appellate court is bound to assume that the trial court allowed judgment for an amount representing the difference upon findings that, as well known to defendant, the right of plaintiff to reside in her home was of special and peculiar value to her and that her life expectancy was eleven and one-half years.

[7] ID.—MOTION UNDER SECTIONS 663 AND 663A, CODE OF CIVIL PROCEDURE — ISSUES — PLEADING.—A motion under sections 663 and 663a of the Code of Civil Procedure is to be considered in the light of the issues made by the pleadings in the action.

[8] ID.—JUDGMENT FOR DAMAGES—PROVISION FOR LIEN—SECTION 2224, CIVIL CODE.—The provision in the judgment in such action which attempts, in effect, to fasten upon the real property a lien as security for the payment of the judgment for damages cannot be upheld under the terms of section 2224 of the Civil Code to the effect that "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

[9] ID.—SECTION 2224, CIVIL CODE—CONSTRUCTION OF.—Section 2224 of the Civil Code merely provides that one gaining a thing in the

---

4.  See 8 Cal. Jur. 882.
5.  See 14 Cal. Jur. 982, 1023.
6.  See 2 Cal. Jur. 883; 15 R. C. L. 877.
9.  See 26 R. C. L. 1232.

manner denounced by its provisions holds that thing in trust for
the person wronged, with the result that the latter may recover it,
or force a reconveyance of it, or quiet his title to it.

[10] ID.—JUDGMENT FOR DAMAGES—IMPOSITION OF LIEN UPON SPECIFIC
PROPERTY—BASIS FOR.—No basis is known upon which a court
may decree a judgment for damages to be a lien upon specific
property and direct its sale under execution for the purpose of
foreclosing the lien.

[11] ID.—JUDGMENTS—LIENS—EQUITY.—The attempt of the trial court
to fasten a lien upon the real property in question as security for
the payment of the judgment for damages cannot be regarded as
a successful exercise of equitable jurisdiction.

[12] ID.—PLEADING—CHARACTER OF COMPLAINT.—Where the complaint
in such action pleads with particularity the facts showing the
fraud and deceit practiced by defendant upon plaintiff, in connec-
tion with the allegations of damage suffered by plaintiff, and the
prayer, in addition to and immediately following the demand for
damages in a specified sum, asks that "it be decreed that defendant
holds said real property as trustee for plaintiff to the extent of
plaintiff's said claim," and the conclusions of law and judgment
follow this dual demand for relief, the prayer with which the com-
plaint concludes, and, especially, the view which the trial court took
of it as evidenced by the conclusions of law and judgment, stamp
the complaint for consideration by the appellate court as a com-
plaint for damages.

[13] ID. — JUDGMENTS — EXECUTION—REAL PROPERTY—LIENS.—Under
section 671 of the Code of Civil Procedure the right existed for
plaintiff to have impounded until it could be sold on execution,
not only the real property described in the judgment, but also all
real property of defendant within the jurisdiction of the trial court,
if other real property existed, or real property which defendant
may later acquire.

---

(1) 17 C. J., p. 843, sec. 163 (Anno.).    (2) 17 C. J., p. 828, sec.
150 (Anno.), p. 843, sec. 163 (Anno.).    (3) 3 C. J., p. 1448, sec.
1610.    (4) 31 Cyc., p. 110.    (5) 4 C. J., p. 775, sec. 2722; 34 C. J.,
p. 364, sec. 579.    (6) 4 C. J., p. 778, sec. 2728.    (7) 34 C. J.,
p. 364, sec. 579.    (8) 34 C. J., p. 570, sec. 872 (Anno.).    (9) 39
Cyc., p. 170.    (10) 34 C. J., p. 570, sec. 872 (Anno.).    (11) 21
C. J., p. 119, sec. 96 (Anno.); 34 C. J., p. 570, sec. 872 (Anno.).
(12) 1. C. J., p. 1046, sec. 175.    (13) 34 C. J., p. 570, sec. 872,
p. 587, sec. 898, p. 590, sec. 902.

10.    See 15 Cal. Jur. 215; 15 R. C. L. 799.
13.    See 15 Cal. Jur. 215.

APPEAL from a judgment of the Superior Court of Los Angeles County. Thos. O. Toland, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Walter M. Campbell and Peyton H. Moore for Appellant.

William Hazlett and Merton A. Albee for Respondent.

WORKS, J.—Plaintiff and her husband were the owners of a residence in Los Angeles County which they had possessed for nearly ten years. In it they contracted with defendant to provide a home for the latter and her three female relatives. Under the contract defendant agreed to pay to plaintiff $100 per month for the board and lodging agreed in the contract to be furnished thereunder. At the time of the making of the contract plaintiff was past sixty years of age and her husband was past seventy. At that time the place of residence of plaintiff and her husband was encumbered by a mortgage. The arrangement contemplated by the contract was consummated and the parties for some time dwelt together in peace and amity and with mutual trust and confidence. The mortgage on the property fell due and was foreclosed. Defendant purchased it at the foreclosure sale, and at the time, as found by the trial court, she "stated, promised and represented to plaintiff that plaintiff could and should continue to have her home in said premises as before, so long as she should desire." Before the expiration of the time for the redemption of the property from the foreclosure sale plaintiff had an opportunity to sell it for a sum largely in excess of the amount necessary to redeem and made defendant acquainted with the fact. The trial court found that defendant then "stated, offered, represented and promised plaintiff that if plaintiff should not sell said property and should not redeem the same from said foreclosure sale, but should permit defendant to obtain a sheriff's deed therefor under said sale, that the agreement and arrangement" theretofore entered into by the parties "should continue so long as plaintiff should live or should desire, and that the plaintiff and her husband could and should have their said home just as they were then having it so long as

they lived or should desire, and defendant urged plaintiff to continue to make her home with defendant as before." Plaintiff assented to this proposal, relinquished all attempt to sell the property or to redeem it from the foreclosure sale, and permitted defendant to take her sheriff's deed. Defendant complied with her agreement until about six months after procuring the deed, when she ousted plaintiff and her husband from the common place of residence and they were compelled to seek shelter elsewhere. This action was then commenced for the purpose of recovering the damages occasioned by defendant's breach of her agreement. Plaintiff was awarded judgment for $6,300 and the judgment also charged the property in question with an equitable lien as security for the payment of the amount. Defendant moved for another and different judgment upon the findings of the court, under the terms of sections 663 and 663a of the Code of Civil Procedure. The motion was denied and the present appeal is prosecuted from the order denying it. We have already determined that the order is appealable (see *Westervelt* v. *McCullough*, 64 Cal. App. 362 [221 Pac. 661]).

The prayer of the complaint contains a general demand for damages in the sum of $6,300. The body of the pleading exhibits allegations of damages in the amount of $5,300 because appellant refused to permit respondent and her husband to remain in "said home on said property," and because she "ousted them from said property," whereby it was lost to respondent and she and her husband were deprived of their home and compelled to seek and did seek other lodgings and were compelled to depend upon the charity of friends and relatives for support; in the sum of $500 upon allegations that respondent's husband died two months after the ouster and that his life was shortened thereby; and in the sum of $500 because of the impairment of the health of respondent which resulted from the ouster.

We now state the findings of the trial court which are material to a consideration of the points presented on the appeal. It was found that appellant paid $3,700 for the property involved in the litigation at the sheriff's sale; that the amount for which respondent could have sold the property shortly before the expiration of the redemption period was $9,000, which amount was then the fair market value thereof; that respondent could have saved $15 each month

out of the $100 per month agreed to be paid for board and lodging by appellant, prior to the death of her husband, and $20 per month thereafter during her own life; that at the time of the ouster the life expectancy of respondent was eleven and one-half years and that of her husband seven and one-half years; that during the year allowed by law for the redemption of the property from the foreclosure sale appellant paid on the property the total sum of $268.31 for taxes, principal and interest on street assessment bonds, and repairs, which amount "plaintiff would have been required to pay to defendant, in addition to said sum of $3700.00, . . . and in addition to interest at 1% per month on said sum of $3700.00, in order to redeem said property from said foreclosure sale"; that the fair rental value of the property at the expiration of the redemption period was $125 per month; and that respondent, at all times after the original arrangement between the parties for board and lodging, was and is unable to earn a living except in the manner contemplated by that arrangement. The court also found that it was unable to determine that the life of respondent's husband was shortened as a result of the acts of appellant, but it was found "that said acts of defendant caused great shock to plaintiff's nerves and caused plaintiff to become sick and ill and impaired her health for a period of six months thereafter." Certain other findings of the court are of especial interest in the consideration of the points presented by the appeal. It was found that appellant made the "statements, representations, promises and agreements" whereby she induced respondent to refrain from redeeming from the foreclosure sale "without intending to keep, fulfill or perform the same, or any of them, and for the purpose and with the intent on her part of thereby inducing plaintiff to refrain from selling said property during said year of redemption and from redeeming the same from under said foreclosure sale, and for the purpose of thereby securing said real property and the title thereto for herself without consideration to plaintiff, and of cheating and defrauding plaintiff out of the same." It was further found that "the right to live in said premises, and to continue to make her home therein as theretofore," that is, before the ouster, "was of a special and peculiar value to plaintiff, as defendant at all of said times well knew, over and above the actual moneys received from

defendant and in addition to the cost of maintenance of said property.''

If we take these findings specifically and without thought of establishing more than a foundation upon which to discuss the points presented by the appeal, measuring them with great strictness by the prayer of the complaint, we adopt the tentative idea that they call for a judgment of at least $5,124.69. The amount stated is arrived at thus: Add to $3,700, the amount paid by appellant at the foreclosure sale, the sum of $268.31, paid out by her as found by the court, or in all $3,968.31, and the further sum of $407, interest at one per cent per month on the sum of $3,968.31 to the date upon which respondent could have sold her property, and the result is $4,375.31. Deduct this sum from $9,000, the amount for which respondent could have sold, and the remainder is $4,624.69. Add to this latter figure the sum of $500, the amount of the damages asked for the impairment of respondent's health, and the result is $5,124.69, the amount above stated. Is there anything in the findings, upon a proper application of the law to them, which requires this sum to be lessened or to be increased to $6,300, the amount for which the trial court rendered judgment?

[1] It is contended by appellant that the award of any damages for the impairment of the health of respondent was improper. It is provided by section 3300 of the Civil Code that, ''For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom.'' The rule upon the subject is stated in somewhat different language in *Hunt Bros. Co.* v. *San Lorenzo Water Co.*, 150 Cal. 51 [7 L. R. A. (N. S.) 913, 87 Pac. 1093] : ''It is the well-settled general rule of damages for any breach of contract that the damages that can be recovered for a breach are only such as may reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract, as the probable result of a breach. Other damages are too remote.'' Was it proper to allow damages for the impairment of the health of respondent under these rules? A mention of a few of the circumstances of the case will serve to clarify the point thus presented. Respondent and her

husband, well advanced in life, had lived together in the residence for eight or ten years before appellant and her relatives appeared on the scene and respondent's right there to reside was of a peculiar value to her, a circumstance well known to appellant. After the original arrangement between respondent and appellant on behalf of the latter and her relatives all the parties resided together for some months practically as one family, thus naturally creating the feeling of trust and confidence which the trial court found that they reposed in each other. Notwithstanding this feeling, and in utter disregard of the warm-heartedness which should characterize the relations between those in a family circle, appellant entered into the arrangement which secured the home of respondent to her without intending to perform her own obligations under the arrangement. This was a detestable exhibition of wickedness and bad faith. Finally, it is to be observed that the arrangement was one the practical effect of which was to provide a home for respondent and her husband and to secure their maintenance through the remainder of their age and until death, whereas its breach thrust them into the street as outcasts and compelled them to resort to the charity of friends and relatives for subsistence and shelter. Under such a chain of circumstances was not an impairment of the health of respondent a "detriment proximately caused" by the breach, "or which in the ordinary course of things," under such a state of facts, "would be likely to result therefrom"? Was not damage to the health of respondent such an outcome "as may reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract, as the probable result of a breach"? If respondent could have foreseen these untoward events at the time of the making of the contract, would she not have feared an impairment of her health as a result of the last event, the breach? Appellant did foresee the events which followed after the making of the arrangement, for, as in effect found by the trial court, she contemplated in the beginning the specific evil which she wrought in the end. Did she not necessarily contemplate an injury to the health of respondent as a possible result of her calculated breach of the contract between them? It seems that upon reason and principle alone all these interrogations must be answered adversely to the claim of appellant. There is to

be found, however, authority which bears upon the question. "The element of bad faith would clothe a court, upon plain principles, with power to fix damages according to the detriment shown by the existing special circumstances of the case. . . . The damages, therefore, would be those which would ordinarily and proximately follow from the breach of such a contract under the peculiar circumstances which were known to both parties" (*Kline* v. *Guaranty Oil Co.*, 167 Cal. 476 [140 Pac. 1]). "One who in bad faith violates his contract is liable for all damages traceable to the breach, including even those which could not be foreseen at the time of making the contract" (*Overstreet* v. *Merritt*, 186 Cal. 494 [200 Pac. 11]). These California opinions establish general principles within which the present case would seem to find an abiding place, but we must look to other jurisdictions for authority more specifically applicable to it. Let us say first, however, that there are many cases which announce the general rule that in actions for the breach of contracts of employment or of contracts relating to property, there can be no recovery of damages for mental suffering or for physical disability or ill health resulting from "nerves." A fair sample of these authorities is *Smith* v. *Sanborn State Bank*, 147 Iowa, 640 [140 Am. St. Rep. 336, 30 L. R. A. (N. S.) 517, 126 N. W. 779]. It was there said: "But no case has been called to our attention, nor do we think one can be found, which holds that damages are recoverable for mental anguish growing out of the violation of a contract for the payment of money. To so hold would be to open the door to a ruinous flood of litigation. Occasions will arise when it would seem that such a recovery is demanded in the interests of justice, but it is better that the exceptional wrong should sometimes go unrequited than to abrogate a rule which in the vast majority of cases has a salutary effect. Generally speaking, failure to pay or deliver money according to agreement gives rise to no recoverable damages beyond the sum wrongfully withheld with interest during the time payment is delayed. Special circumstances may sometimes justify the recovery of special damages, but these do not include compensation for mental suffering." We are satisfied that the rule of cases of this class has no application to controversies like the one now before us, and that other adjudications are readily to be found which do govern it.

In a case in which undertakers had breached an agreement safely to keep the body of a deceased person until the time when a belated interment was to occur, it was said: "The cases rest upon the reasonable doctrine that where a person contracts, upon a sufficient consideration, to do a particular thing, the failure to do which may result in anguish and distress of mind on the part of the other contracting party, he is presumed to have contracted with reference to the payment of damages of that character in the event such damages accrue by reason of a breach of the contract on his part" (*Renihan* v. *Wright,* 125 Ind. 536 [21 Am. St. Rep. 249, 9 L. R. A. 514, 25 N. E. 822]). Authority of a similar character on the facts is to be found in *Loy* v. *Reid,* 11 Ala. App. 231 [65 South. 855]. An interesting case arose upon the breach by a dressmaker of an agreement to furnish dresses to a prospective bride. It was said in the opinion: "Although the general rule is that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain, to the party. When the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality, or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach. A contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule. . . . In computing the damages the allowance must be restricted to what may reasonably be held to have been within the contemplation of the parties in entering into the contract. The contract was to furnish the dresses in time for the wedding on the 19th. D. H. Holmes must be held to have known that, if the dresses were not finished by that day, the bride would be keenly disappointed. Also that the bride would need the dresses for the festivities incident to her wedding and immediately following, for which it is customary for brides to provide themselves with a trousseau. In gauging this disappointment of the bride the surrounding circumstances must, as a matter of course, be considered. And one of these is the fact that entertainments were planned, and that for want of the dresses these

entertainments would have to be given up; and another is her humiliation in going to her husband unprovided with a suitable trousseau. We do not think that the amount of $575, fixed by the district judge, is excessive.'' (*Lewis* v. *Holmes,* 109 La. 1030 [61 L. R. A. 274, 34 South. 66].) Another decision of a similar character to the one last noted was based upon the breach of a contract to furnish a conveyance for the purpose of transporting a bridegroom to the scene of his approaching wedding. Because of the breach the bride was kept ''waiting at the church,'' this and other circumstances moving the groom to sue for damages for mental suffering, physical pain, humiliation, and mortification. The view of the case which the appellate court took is sufficiently shown by the syllabus which precedes the opinion in an unofficial report in which it is printed: ''Where a contract is entered into under special circumstances known to both parties at the time, the damages recoverable for a breach are measured not only by the actual loss sustained naturally resulting as the ordinary consequence of the breach, but include consequences which may under the special circumstances be presumed to have been in the contemplation of the parties as the probable result of the breach. . . . Mental anguish is an element of actual damages for breach of contract'' (*Browning* v. *Fies,* 4 Ala. App. 580 [58 South. 931]). It will be observed that in all these cases it was determined that recovery could be had for mental anguish, humiliation, and the like. In the present action, however, the disability suffered by respondent was physical, for she was caused by the acts of appellant to become ill and her health was impaired for the period stated in the findings. In considering the cases to which we have just pointed, the nature of the injury to respondent is distinctly worthy of note, as the courts have often been disinclined to allow damages for mental anguish in cases in which physical pain or impairment of health were an undoubted basis for relief. Forgetting, therefore, the matter of mental anguish and reducing the doctrine of the cases which we have cited, and of others which we have examined, to the terms of the present controversy, we have no doubt that a correct rule of law may be stated thus: **[2]** Whenever the terms of a contract relate to matters which concern directly the comfort, happiness, or personal welfare of one of the parties, or the subject

matter of which is such as directly to affect or move the
affection, self-esteem, or tender feelings of that party, he
may recover damages for physical suffering or illness proxi-
mately caused by its breach. In the statement of this rule,
expressly limited to physical suffering or illness, as it is, we
rely upon authority as to mental anguish for the reason that
cases showing physical disability as the result of a breach
of contracts are unusual, to say the least. We do not rely
upon *Sloane* v. *Southern California Ry. Co.*, 111 Cal. 668
[32 L. R. A. 193, 44 Pac. 320], because that case sounded in
tort, although the supreme court says in its opinion that the
plaintiff, with propriety, might have founded it upon con-
tract. This statement leaves it open to conjecture whether
the court would have applied the same measure of damages
if the action had been based upon the defendant's contract
of carriage, and whether, even so, the case would then have
been in point, relating, as it does, to the obligation of a com-
mon carrier. Finally, in applying the rule which we have
formulated above, it is to be observed that respondent is
without remedy for the impairment of her health if she can-
not recover in this action. We can conceive of no theory
upon which she could sue as upon a tort. **[3]** The trial
court found that she was "ousted" from her old home, it is
true, and under ordinary circumstances, having in mind the
sanctity with which findings are invested upon a motion
under sections 663 and 663a of the Code of Civil Procedure,
we might possibly deem the ouster to have been forcible and
therefore tortious. This we cannot do in the present in-
stance, however, as it is stated in the briefs that the ouster
was not of that character, a statement to which we are bound
to pay regard. On the whole, the damage to respondent's
health, under the authorities, was in contemplation of the
parties when they made their contract and it resulted proxi-
mately from the breach. We are clearly of the opinion that
she was entitled to recover. There is nothing to interfere
with this conclusion in the cases cited by appellant, *Newman*
v. *Smith*, 77 Cal. 22 [18 Pac. 791], *Fox* v. *Oakland Con. St.
Ry.*, 118 Cal. 55 [62 Am. St. Rep. 216, 50 Pac. 25], *West-
water* v. *Grace Church*, 140 Cal. 339 [73 Pac. 1055], and
*Bond* v. *United Railroads*, 24 Cal. App. 157 [140 Pac. 982].

Appellant contends that the findings do not support the

judgment for $6,300 by reason of the fact that the body of the complaint specifically alleges damages, in money, only to the extent of $5,300 for the loss of respondent's property and $500 for the impairment of her health, if we lay aside, as we must, the allegation of $500 damage for the shortening of the life of respondent's husband. It is said that the prayer for damages in the sum of $6,300 is controlled by the allegations mentioned. [4] The point is without merit, as it is well settled that the amount stated in the prayer of a complaint for damages is equivalent to an allegation that the amount thus stated is the damage suffered by the plaintiff (see *Tucker* v. *Cooper*, 172 Cal. 663 [158 Pac. 181]).

In addition to the amount which we have tentatively stated above as the least sum for which judgment should have been rendered in favor of respondent, that is, the sum of $5,124.69, she insists that the findings support various other items of damage which, when added to the amount named, will produce a result showing a much greater total than the sum for which judgment was given. We are satisfied that most of these claims are not well founded, for the reason that they cover matters for which respondent is compensated by the damages allowed her for the loss of her property. There are, however, some general findings of the court which to our minds support that part of the judgment which is in excess of $5,124.69. The difference between that sum and the total amount of the judgment is but $1,175.31. The court found that, as well known to appellant, the right of respondent to reside in her home was of a special and peculiar value to her and that her life expectancy was eleven and one-half years. [5] We cannot know what was the evidence upon which the finding that respondent's right was of unusual value was based, for on a motion under sections 663 and 663a of the Code of Civil Procedure no facts can be considered except those which are embraced in the findings of the court (*Dahlberg* v. *Girsch*, 157 Cal. 324 [107 Pac. 616]; *Hole* v. *Takekawa*, 165 Cal. 372 [132 Pac. 445]; *Akley* v. *Bassett*, 189 Cal. 625 [209 Pac. 576]). Moreover, upon an appeal from an order denying such a motion "any uncertainty in the findings must be resolved against the appellant, and they are to be most strongly construed in favor of respondent" (*Spotton* v. *Dyer*, 42 Cal. App. 585 [184 Pac. 23]). [6] Under these rules of law we are bound to as-

sume that the trial court allowed judgment for as much as
$1,175.31 upon the findings last above stated.    Granting for
the purpose of argument, what we need not now decide, that
in a proper case under such a motion as is now before us, a
court of review may reduce a judgment as excessive under
the findings, no such case appears here.    The judgment
awarded to respondent for her loss of the right to continue
to reside in her home amounts to but about $100 per year
for the period of her life expectancy.    It is quite possible
that the evidence heard by the trial court was of such a
character as to have justified a larger allowance as to this
item and that the total amount of the judgment was limited
to $6,300 for the reason that the prayer of the complaint
demanded that sum.    It is clear to us that the judgment for
$6,300 must stand.

[7]    The sole remaining point presented in the briefs
makes necessary a statement showing the unusual character
of the complaint, and in making the statement we have in
mind the well-settled rule that a motion under section 663
and 663a of the Code of Civil Procedure is to be considered
in the light of the issues made by the pleadings in the action
(see *Dahlberg* v. *Girsch,* 157 Cal. 324 [107 Pac. 616] ; *Akley*
v. *Bassett,* 189 Cal. 625 [209 Pac. 576] ).    The complaint in
the present action pleads with particularity the facts show-
ing the fraud and deceit practiced by appellant upon re-
spondent, in connection with the allegations of damage to
which we have already referred.    If, then, the averments as
to damages be regarded as surplusage, the pleading appears
to state a complete cause of action for relief under section
2224 of the Civil Code, which reads, ''One who gains a thing
by fraud, accident, mistake, undue influence, the violation of
a trust, or other wrongful act, is, unless he has some other
and better right thereto, an involuntary trustee of the thing
gained, for the benefit of the person who would otherwise
have had it.''    The prayer, however, in addition to and im-
mediately following the demand for damages in the sum of
$6,300, asks that ''it be decreed that defendant holds said
real property as trustee for plaintiff to the extent of plain-
tiff's said claim,'' and the conclusions of law and judgment
follow this dual demand for relief.    The former recite that
defendant is and by the judgment shall be ''declared to be
an involuntary trustee of said real property for plaintiff to

the extent and in the sum'' of the money judgment, ''which interest of plaintiff in said real property is and shall be by way of security to plaintiff for the payment of said judgment, and shall cease and terminate upon and by full payment and satisfaction of said judgment.'' It is then recited that ''plaintiff is entitled to further judgment that said real property be sold by the sheriff . . . on execution'' for the purpose of satisfying the judgment for damages. As already remarked, judgment passed accordingly.

[8] Appellant's last point is that the findings afford no support for the portion of the conclusions of law and judgment which attempts, in effect, to fasten upon the real property a lien for the payment of the judgment for damages. Respondent contends that she is entitled to that relief under the terms of section 2224 of the Civil Code, but the contention surely is without merit. [9] The section merely provides that one gaining a thing in the manner denounced by its provisions holds that thing in trust for the person wronged, with the result that the latter may recover it, or force a reconveyance of it, or quiet his title to it. This view of the effect of the section has prevailed, ever since its enactment, in the two score opinions of the supreme court and of the district courts of appeal in which it is cited, all of which we have examined. By this we do not mean to say that the courts have in express terms declared the effect of the section so to be, for they have not, but that they have invariably been called upon in such manner to enforce its salutary mandate. The enactment has never before been resorted to in an attempt to fasten upon a ''thing,'' to employ the word used in it, an involuntary trust to secure the payment of damages or to secure the satisfaction of any other money obligation or claim. The very language of the section would seem to preclude its use for the attainment of such an end.

[10] Is there any other basis upon which a court may decree a judgment for damages to be a lien upon specific property and direct its sale under execution for the purpose of foreclosing the lien? We know of none. In an endeavor to uphold the portion of the judgment now in question, and in addition to her contention as to the bearing of section 2224 of the Civil Code upon the point before us, respondent cites 21 C. J., pp. 118, 119, tit. ''Equity,'' sec. 96, *Bradley* v. *Bosley*, 1 Barb. Ch. (N. Y.) 125, and *Greil* v. *City of*

*Montgomery,* 182 Ala. 291 [Ann. Cas. 1915D, 738, 62 South. 692]. We can see in these authorities nothing to aid respondent. **[11]** We cannot regard the attempt of the trial court to fasten a lien upon the real property as a successful exercise of equitable jurisdiction. **[12]** While the body of the complaint exhibits the dual character to which we have referred, the prayer with which it concludes, and especially the view which the trial court took of it as evidenced by the conclusions of law and judgment, stamp it for our consideration as a complaint for damages. The judgment in its essence is one for damages and to that judgment the attempt to charge the property with a lien is a mere incident. In our opinion the incident cannot stand and the judgment must be reduced to its essence.

We have made disposition of appellant's last point because it is presented by the motion and because it is argued in the briefs, not because we regard it as important. The judgment of the trial court, in essaying to give to respondent a lien for the enforcement of her judgment for damages, could if valid secure to her no greater right than the law has expressly provided for her protection. **[13]** The purpose of the court's attempt was in effect to impound the real property until it could be sold on execution. This same right exists for her under section 671 of the Code of Civil Procedure, not only as to the property described in the judgment, but as to all real property of appellant within the jurisdiction of the trial court, if other real property she has, or may later acquire. The section provides, in part: "Immediately after filing the judgment-roll, the clerk must make the proper entries of the judgment under appropriate heads, in the docket kept by him . . . and from the time the judgment is docketed it becomes a lien upon all the real property of the judgment debtor not exempt from execution in the county, owned by him at the time, or which he may afterwards acquire, until the lien ceases." The existence of this section furnishes an added argument against the portion of the judgment attempting to create a lien on specific real property of appellant. In making the attempt the trial court performed a futile act.

The conclusions of law are amended by striking therefrom that part thereof which follows the paragraph numbered "I" and which precedes the paragraph commencing

"Let judgment be entered," and the judgment is modified by striking therefrom all that part thereof which follows the paragraph commencing "First," and which precedes the paragraph commencing "Fourth," and by changing the said word "Fourth" to the word "Second." As so modified the judgment is affirmed.

Finlayson, P. J., and Craig, J., concurred.