DOOLING, J.
 

 I. J. Ely, a general contractor, sued Mario Bottini on a written subcontract entered into between the parties on June 6, 1955, whereby the latter had agreed to do certain construction work for Ely. Plaintiff alleged that Bottini had failed to provide timely performance, and that as a result of this delay heavy rains had damaged the work. He further alleged that he had been compelled to do certain portions of Bottini’s work. The court overruled a demurrer and defendant answered the complaint, alleging that plaintiff himself had breached the contract by failing to make progress payments and that no damages had resulted to plaintiff. During the trial of this cause without jury, two supplemental complaints were allowed to be filed. The court filed findings of fact and conclusions of law, including a finding that although Bottini had earned $27,953, he was chargeable with damages in the amount of $18,934.70. Consequently, the court ordered plaintiff to pay defendant $7,318.30 plus interest. Both parties now appeal from the decree granting the above-mentioned relief.
 

 On June 12, 1955, I. J. Ely contracted to perform certain work at Loch Lomond Subdivision, Unit Number 2, in Marin County, for Robert McCarthy Company, Inc. This contract provided that the work must be completed within 60 working days, or by September 12, 1955. It contained a liquidated damages clause requiring Ely to pay McCarthy $50 per day for each calendar day of delay beyond September 12.
 

 This contract provided for the installation of sewers, curbs, gutters, and sidewalks, for which work Ely had previously let a subcontract to Mario Bottini on June 6, 1955. By the terms of the June 6 contract, Bottini was to complete his work within 40 working days after the signing of the Ely-McCarthy contract. Also, by the terms of the June 6 contract, Ely was to pay Bottini a bonus of $300 in exchange for the latter’s bonding of his work directly to the McCarthy Company. Bottini, in fact, did execute such a bond dated June 22, 1955.
 

 The June 6 contract and the bond both referred to 9,240 square feet of sidewalk which Bottini was to install. Ely testified that he mentioned to Bottini the possibility that this
 
 *291
 
 portion of the work might be eliminated. The McCarthy Company later did eliminate it, Ely testifying that this cancellation was by authority of a provision of the June 12 contract permitting McCarthy to do so. Bottini testified that it would cost about 15 cents per lineal foot less to install curbs and gutters when installing sidewalks at the same time and that he had contemplated installing all three at the time he bid for the June 6 contract. He also testified that he was told not to install sidewalks only after he had begun to do so, sometime between August 18-20.
 

 Bottini began work on July 21, 1955, but on about August 14, he had completed only about 20-25 per cent thereof. By September 12, 1955, he had completed only about 35 per cent of his job. Ely could not proceed with street paving under the June 12 contract until Bottini had finished.
 

 McCarthy testified that he had observed that Bottini was working too slowly, and that he had written several letters to Ely and had spoken to Bottini many times concerning this. Ely testified that he had made many telephone calls to Bottini, starting as early as the latter part of July, complaining that the work was behind schedule. Ely’s vice president and supervisor of the Bottini contract, Ralph C. Noah, also had numerous conversations with Bottini on the same subject. Noah testified, however, that despite this Bottini frequently used no more than two or three men at a time on the job, and these worked only sporadically during August. McCarthy corroborated this, stating that he didn’t remember ever seeing more than two or three men on the job at any time. Bottini denied that he had had an insufficient crew.
 

 Ely testified that he had first warned Bottini that the latter’s delay would make it necessary to hire other subcontractors at Bottini’s expense sometime between August 25 and September 5. On October 7, 1955, Ely sent Bottini a registered letter reminding him of the June 6 contract obligations, warning him of the damages which further delay would cost him, and stating that the expense of another contractor, already hired, would be charged against him.
 

 Ely actually employed several subcontractors to complete various portions of the June 6 contract. Some of Bottini’s work had not met contract specifications. The city required a compaction of 90 per cent relative density around the sewer line. Tests showed that Bottini had not complied with this requirement. Ely paid the J. D. O’Connor Company and a
 
 *292
 
 concrete supplier a total of $4,748.32 for work done during October and November of 1955. He informed Bottini of the hiring of the O’Connor Company at the time the latter began work, Bottini having already advised him to find someone else to do the job if he could. Ely also hired Ghilotti Brothers, Inc., to install catch basins, again informing Bottini of such and receiving his concurrence at the time Ely first contacted Ghilotti. The latter began that work on November 12, 1955.
 

 Ely did not recall having informed Bottini that this employment of other subcontractors would be on an overtime basis, but he testified that such was necessary in order to mitigate damages. Noah testified that Bottini must have known of this week-end work because he could see its results when he returned to the job on Monday mornings. Bottini denied having known that he was being charged overtime rates for O’Connor’s work until he received the bills for it in January or February.
 

 Heavy rains began falling on November 13, 1955, and continued through December 24 of that year. The resulting floods washed mud and gravel down from surrounding higher ground, causing extensive damage to the entire job, which was still uncompleted. On December 24, 1955, Ely again wrote to Bottini, insisting that he take immediate steps to alleviate the damages being caused by the rain, and to complete his contractual obligations. Ely also again stated that Bottini would be charged for all repairs necessitated and damages caused by his breach of contract. Ely testified that although Bottini subsequently sent men to clean out sewer manholes, he failed to clean the clogged drainpipes as requested in the above-mentioned letter. On December 27, 1955, and on March 12, 1956, Ely sent additional letters giving similar notice to Bottini.
 

 The Ely-McCarthy contract called for 90 per cent progress payments. McCarthy made two of these to Ely prior to November, but held up subsequent payments amounting to about $15,500 because the work was progressing too slowly.
 

 Bottini testified that before he signed the June 6 contract, either Ely or Noah had promised him monthly progress payments. He submitted his first invoice to Ely on September 1, 1955, for $8,925.50. Ely did not make payments to Bottini as the latter’s work progressed except for one payment of $1,200, but did give credit to Bottini on other debts owing by Bottini to Ely.
 

 Noah testified that some of the delay was caused by the
 
 *293
 
 absence of survey stakes, which were the responsibility of McCarthy’s engineer, but that this delay was not substantial, amounting to a few hours only. Bottini testified that when he first went out to begin work the subdivision was not ready, that he was not informed by Ely that he could begin until mid-July, and that because the stakes were not yet in place, he was delayed several days more. He also testified that he was delayed by the fact that he had to correct the grade furnished him in several places before he could install the curbs and gutters.
 

 Ely entered an agreement with McCarthy whereby the former deducted $3,442.97 from his bill to cover the costs to the latter of delay and repairs. This was by way of an alternative to invoking the liquidated damages clause of the June 12 contract, which would have required a damages settlement of approximately $15,000.
 

 Bottini’s Appeal
 

 We shall take up appellant Bottini’s points urged for reversal in the order in which they are stated in his brief.
 

 1. The findings that Bottini’s work “was poorly done” find no support in the evidence.
 

 There is no express finding that Bottini’s work was poorly done and the theory of the case supported by ample evidence, although not without substantial contradiction, is that Ely was compelled to let portions of Bottini’s work to other contractors because of delay and the delay in the completion of Bottini’s contract made it impossible for respondent Ely to complete the paving of the streets before the rains set in and that the damage to the property by flooding from rainfall resulted because of the fact that the streets were not paved. There is direct testimony by Ely that if the streets had been paved and the sewer and gutter work completed the damage from rainfall would not have occurred.
 

 2. Even if Bottini were guilty of delaying the work, this delay was not a proximate cause of plaintiff’s detriment. Hereunder Bottini argues that the early rainfall was of unasual intensity and not of a character which the parties could have foreseen when the contract was entered into. Bottini cites the leading ease of
 
 Hadley
 
 v.
 
 Baxendale,
 
 9 Ex. 341, 156 Engl.Rep.R. 145 and Civil Code, section 3300, for the settled rule that for the breach of a contract the party committing the breach is only liable for the detriment “which,
 
 *294
 
 in the ordinary course of things, would he likely to result therefrom. ’ ’
 

 Bottini had been in the contracting business in the locality for a considerable number of years and at the time he and Ely entered into their contract he knew that extensive rainfall might be anticipated in the months of November and December. The court could reasonably conclude that the possibility of damage to the property and the unfinished work if it was not completed by November was in the contemplation of the parties when they entered into the contract. This is all that the law and section 3300, Civil Code, requires and brings the case within the rule laid down by the court in
 
 Hunt Bros. Co.
 
 v.
 
 San Lorenzo Water Co.,
 
 150 Cal. 51 [87 P. 1093, 7 L.R.A. N.S. 913], cited and relied upon by Bottini. At page 56 of that opinion the court said:
 

 “It is the well-settled rule of damages for any breach of contract that the damages that can be recovered for a breach are only such as may reasonably be supposed to have been within the contemplation of the parties at the time of the making of the contract, as a probable result of a breach. . . . This rule does not mean that the parties should actually have contemplated the very consequence that occurred, but simply that the consequence for which compensation is sought, must be such as the parties may be reasonably supposed,
 
 in the light of all the facts known, or which should have been known to them,
 
 to have considered as likely to follow, in the ordinary course of things, from a breach ...” (Emphasis in the original opinion.)
 
 (West Coast Winery
 
 v.
 
 Golden West Wineries,
 
 69 Cal.App.2d 166, 170 [158 P.2d 623] ;
 
 Westervelt
 
 v.
 
 McCullough,
 
 68 Cal.App. 198, 204 et seq. [228 P. 734] ;
 
 Siminof
 
 v.
 
 Jas. H. Goodman & Co. Bank,
 
 18 Cal.App. 5,10 [21 P. 939].)
 

 While Bottini testified that the rain in December was the heaviest that he had observed in any December he further testified: “I seen one at Christmas in 1921. That was a big storm but I doubt if it was as big as this one here.” Statistics of rainfall in the area for 81 years were introduced from which the court could find by comparison that this amount of rainfall, while perhaps not commonplace, was not greater than had been measured in other years over a like period. A rainstorm somewhat greater than usual “is not so totally unforeseeable as to act as a superseding cause.” (
 
 Southern Pacific Co.
 
 v.
 
 City of Los Angeles,
 
 5 Cal.2d 545, 549 [55 P.2d 847] ;
 
 cf. Sturges
 
 v.
 
 Charles L. Harney, Inc.,
 
 165 Cal.App.2d 306, 320 [331 P.2d 1072];
 
 Mitchell
 
 v.
 
 City
 
 
 *295
 

 of Santa Barbara,
 
 48 Cal.App.2d 568, 572 [120 P.2d 131].)
 
 Carnegie, Phipps & Co., Limited
 
 v.
 
 Holt,
 
 99 Mich. 606 [58 N.W. 623] and
 
 Barnard-Curtiss Co.
 
 v.
 
 United States,
 
 257 F.2d 565, cited by Bottini, are distinguishable on their facts.
 

 3. The evidence of plaintiff’s damages is too uncertain to support a recovery.
 

 Bottini argues that the evidence is too uncertain to support the award of damages and cites
 
 Griffith Co.
 
 v.
 
 San Diego College for Women,
 
 45 Cal.2d 501 [289 P.2d 476, 47 A.L.R.2d 1349]. In that case the arbitrator found as a fact that the evidence was too uncertain to support an award and the Supreme Court affirmed. Here the court found the damages which is the exact converse of the Griffith case. The correct rule to be applied in this case is stated in
 
 California Lettuce Growers, Inc.
 
 v.
 
 Union Sugar Co.,
 
 45 Cal.2d 474, 487 [289 P.2d 785, 49 A.L.R.2d 496] : “While Civil Code, section 3301, provides that no damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin, the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.” More succinctly the court said in
 
 Zinn
 
 v.
 
 Ex-Cell-O Corp.,
 
 24 Cal.2d 290, 297-298 [149 P.2d 177] : “One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness.”
 

 Bottini also argues that the flooding was caused by the fact that no culvert had been installed under the loosefill in an unnamed road at a swale but there was ample evidence from which the court could find that Bottini’s delay was the proximate cause of the damage suffered.
 

 Bottini contends that in no event can he be liable for damages under the penalty clause of Ely’s contract with McCarthy since the court found that Bottini was not advised of the penalty clause until after he had entered into his contract with Ely. Under the penalty clause at $50 per day Ely would have been liable to McCarthy for approximately $15,000. His liability was settled by Ely with McCarthy for $3,442.97 based, except for $1,950 hereafter discussed under Ely’s appeal, not on any compromise of liability under the penalty clause, but on the actual damages suffered by McCarthy from the delay and rain damage as ascertained by the parties. The court was entitled to find that such damages were
 
 *296
 
 in the contemplation of Bottini at the time that he entered into his contract with Ely. As to these damages the penalty clause was not the basis of the settlement which Ely made with McCarthy and the question of liability under the penalty clause is not properly involved.
 

 Bottini invokes the doctrine of
 
 Gogo
 
 v.
 
 Los Angeles etc. Flood Control Hist.,
 
 45 Cal.App.2d 334 [114P.2d 65], wherein the court held that one contracting for an improvement who by his own act renders performance impossible, thereby loses his right to claim liquidated damages provided for in the contract for delay. The ease is inapplicable since McCarthy who was ultimately entitled to damages was not responsible for any appreciable delay, and furthermore, as we have already pointed out, a part of the settlement was for the actual damage suffered by McCarthy and not by way of penalty so that the special rule with regard to penalties is not applicable. Taking into consideration the delays attributable to Ely, which the court found to be 26 per cent of the whole, Bottini could still have completed his contract in time to have avoided the damage which the property suffered by the November and December rains.
 

 Finally Bottini contends that since Ely breached the contract Bottini was freed from the contract provisions, including the provision for time of completion, and is entitled to recover on
 
 quantum, meruit
 
 for all the work done.
 
 (Boyd
 
 v.
 
 Bargagliotti,
 
 12 Cal.App. 228 [107 P. 150].) If a party desires to treat a breach as justifying a rescission he must elect to do so (12 Cal.Jur.2d, Contracts, § 260, pp. 491-492). Here Bottini elected to proceed under the contract and his exclusive remedy was therefore in damages for Ely’s breaches.
 
 (House
 
 v.
 
 Piercy,
 
 181 Cal. 247, 251 [183 P. 807] and eases cited.) Furthermore “(i)f the covenant be of minor importance, not going to the root of the matter, and one that can readily be compensated in damages, the party injured cannot rescind, but must perform his part of the contract and seek compensation in damages.” (12 Cal.Jur.2d, Contracts, §257; pp. 487-488;
 
 Fountain
 
 v.
 
 Semi-Tropic Land & Water Co.,
 
 99 Cal. 677 [34 P. 497].)
 

 Bottini urges three such breaches:
 

 1. The failure to have the premises ready for Bottini to commence work until July 21, 1955; 2. The failure to make progress payments to Bottini; 3. The elimination of sidewalks from Bottini’s contract.
 

 1. If Bottini’s work had been completed in 40 days
 
 *297
 
 from July 21 he could have completed by early September in ample time for Ely, under the evidence most favorable to him to complete his contract with McCarthy before the first damaging rain in November.
 

 2. The Ely-Bottini contract contained no express provision for progress payments. The evidence was in conflict as to whether or not there was a custom in the business to make progress payments where the contract was silent on the subject. The trial court found against Bottini on this issue and that finding on conflicting evidence is conclusive on appeal.
 

 3. The elimination of the sidewalks did not prevent performance of the balance of the contract but only somewhat increased the over-all cost. Bottini was in fact allowed an offset in the judgment for the increased cost to him from the elimination of the sidewalks. This was all that he was entitled to.
 

 Ely’s Appeal
 

 Bottini was allowed $585 for loss of profits and increased cost to him from eliminating the sidewalks. Bottini testified that he based his bid on the decreased cost of installing curbs and gutters where the installation of sidewalks was included in the job. While the Bottini-Ely contract referred to a contract to be entered into with McCarthy and the later McCarthy contract provided that McCarthy might at his option eliminate the sidewalks therefrom the Bottini-Ely contract contained no express reservation of the right to eliminate any item. While Bottini did not expressly deny Ely’s testimony that Ely told Bottini about the possibility of eliminating sidewalks before Bottini bid on the job, on the whole evidence the court could reasonably find, as it did, that there was no reservation of the right to eliminate the sidewalks in the Bottini-Ely contract. The amount allowed is justified by Bottini’s testimony that he could have saved $346.50 on the job and would have made a profit of 10 per cent on the contract price for installation of the sidewalk.
 

 Ely contests the allowance of $924.77 to Bottini for four catch basins, when his bid specified $125 apiece. However there was evidence that the catch basins actually installed were a more expensive type than standard catch basins thus supporting the additional allowance.
 

 The court found as to Ely’s settlement with McCarthy that Bottini was liable to Ely therefor “less the sum of $507, being 26% of 39 days penalty at fifty and 00/100
 
 *298
 
 dollars per day, which the court finds is the number of days chargeable to plaintiff for his own delay.” Thirty-nine days at $50 per day is $1,950 and $507 is 26 per cent thereof.
 

 Bottini invokes the rule of
 
 Gogo
 
 v.
 
 Los Angeles etc. Flood Control Dist., supra,
 
 45 Cal.App.2d 334 and argues that under the rule of that case the penalty cannot be apportioned since Ely was responsible for some of the delay. But a different rule is applicable as between a contractor and subcontractor where the primary contract with the owner provides a penalty for delay and the contractor and subcontractor are each responsible for part of the delay. The rule in such case is thus stated in 25 C.J.S., Damages, section 115, page 697:
 
 “A
 
 subcontractor is bound by a forfeiture clause contained in the original contract, if the parties contemplated at the time of making the subcontract that such clause should apply; and if in such a case both the contractor and the subcontractor are the cause of the delay, each should bear his respective proportion of the damage resulting therefrom.”
 

 By bonding his work directly to McCarthy Bottini' assumed the obligations of the primary contract, which was expressly referred to in the bond, including the penalty clause. The court following the rule just quoted properly made each
 
 “bear
 
 his respective portion” of the penalty attributable to the delay.
 

 Judgment affirmed.
 

 Kaufman, P. J., and Draper, J., concurred.