## SCHMITT v. CONTINENTAL–DIAMOND FIBRE CO.

### No. 7300.

Circuit Court of Appeals, Seventh Circuit.

Dec. 13, 1940.

Rehearing Denied Jan. 13, 1941.

Geo. T. Rogers, L. Dow Nichol, Jr., and George B. Rogers, all of Chicago, Ill., for appellant.

John F. Rosen, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from a judgment in an action to recover damages for breach of a sales agency contract. Jury was waived, and the court entered judgment for the defendant.

The question presented is whether appellant is entitled to damages for loss of profits alleged to have resulted from the illegal termination of his contract.

Appellant sued upon a contract entered into between the parties as of April 1, 1929, although it was not actually signed until about June 10, 1929. According to its provisions, appellant was given an exclusive agency for the sale of appellee's products in a district including the State of Ohio, parts of Michigan, West Virginia, New York, Pennsylvania, Virginia, and Kentucky, as well as parts of Ontario, Canada. The contract provided for a commission of 8% on certain products and 5% on others, the rate depending upon the type of product sold. The products consisted of fibre and bakelite articles. The term of the contract was fixed by the following paragraphs:

"It·is mutually agreed by both parties of this contract that it is to cover the period from April 1st, 1929 to December 31st, 1933 and that it is to continue thereafter from year to year, unless either gives notice in writing at least thirty days prior to the December 31st its termination is desired.

"Upon giving such notice of termination, this contract shall become null and void upon the next date of expiration, which in that case will be on the December 31st following the giving of notice, and both par-

ties agree that notice of termination implies and carries with it a complete release from all the conditions of the contract."

The contract itself made no reference to the payment of expenses of the sales district, although that matter was covered in a letter written by the president of the company shortly before appellant took over the district, as follows: "Under our regular selling terms to Sales Managers covering certain definite districts, all the expense of selling is assumed by the Sales Manager, and his compensation from the Company is in the form of a commission at the rate of 8%, figured on the net sales."

January 18, 1930, appellant was requested to and did sign a supplemental instrument which provided that the 1929 agreement might be terminated at any time upon thirty days notice prior to the termination of any contract year, said notice to be given in writing, addressed to the appellant, for any of the following causes:

"(a) In the event that party of the second part shall at any time while the agreement is in force fail to devote his entire time, skill and attention to the business of the party of the first part; or that without the consent of the party of the first part he shall undertake to sell or sell materials manufactured by any person or corporation other than the party of the first part; or that without the consent of the party of the first part he shall undertake to sell any materials of the party of the first part in any territory other than specified in his Agreement; or that in the event that in the opinion of the Board of Directors of the party of the first part he shall at any time for a reasonable period fail to produce sales of the product of the party of the first part which shall be satisfactory under the conditions in the industry then existing.

"(b) In the event that the existence of the said Agreement shall prove to be of such a nature as to prevent or delay negotiations which may during the term of said Agreement be instituted for a sale, merger, consolidation or other change in the corporate structure of the party of the first part, or of the identity of the interests controlling the same."

The supplement also provided that in the event of the cancellation and termination of the original agreement in accordance with any of the foregoing conditions, the party of the first part agreed to indemnify the party of the second part for any loss or damage to which he might be put by reason of liabilities upon leases of office space or warehouse accommodations, clerical bills, telephone and similar office charges or any other obligations he had assumed as an incident to the contract and which had been approved by the Board of Directors either at or prior to such termination. The contract was further modified in December, 1931, by a substantial increase in the rate of commissions payable under it.

Appellant entered upon performance of the contract in April, 1929, establishing headquarters first at Cincinnati and later at Cleveland. Until 1931, he maintained offices in a factory, the operation of which he supervised until its dismantlement in that year. Offices were also maintained in several other cities in the territory. Appellant paid all rentals of the various offices, salaries of office help, salesmen, entertainment and other expenses incurred in the operation of the sales organization. During the year 1929, he made a profit of almost $30,000 on his business. The year 1930 was less profitable, with net earnings of only a little over $12,000. By the year 1931, expenses had mounted, and sales declined, so that the net result for the year was a loss of over $5,000. The same condition prevailed in 1932, and the expenses for the first *four* months of that year amounted to over $16,000, as against commissions for the first *five* months of approximately the same amount.

In March, 1931, negotiations appear to have been entered into preliminary to a revision of the commission rates necessitated by the fact that appellant was then operating at a loss. At that time he wrote the treasurer of the company relative to the assembling of data, stating: "Under the present plan, coupled with adverse business conditions, I am regularly showing a loss to myself personally and I know that you want to correct this sort of a situation. * * * on April 1st I am adding two more men which is going to make the burden still heavier for me until I can get them on a self-supporting basis. On about March 16th, I will be moved into our new headquarters * * * which will be a considerable improvement over our present offices but, of course, at no financial saving. * * * I am going to put on as many men as are needed to get our share of all the sales in this district but it takes money to keep them going." In December 1931, the

new schedule with a graduated scale of commission rates was put into effect, which, according to appellant's testimony, "worked out as an increase. * * * That was a protection for low business. At times when the volume was high the rate was about the same as it was under the flat 8% arrangement." Meantime, appellee had been advancing funds over and above appellant's commissions for the payment of expenses during the latter half of 1931 and the first four months of 1932. These advances amounted to over $20,000 by May, 1932, the last, of $2,500 being made May 2, 1932, five months after the new schedule of commission rates went into effect. The record shows that similar advances were made to other district sales managers occupying positions similar to that of appellant.

On May 23, 1932, while appellant was attending a sales convention in Chicago, he was handed the following letter:

"By authority of the Board of Directors, I beg to advise you of the termination of our sales contract dated April 1, 1929, and supplementary amendment thereto dated February 18, 1930, in accordance with the terms and provisions of the contract.

"This termination becomes effective as provided in the contract December 31, 1932. However, it is our intention 'to take immediate physical charge of the direction of sales in the district covered by the agreement at once, and you will be credited with compensation as provided by the contract until the termination thereof, such commissions to be credited against our advances to you until such a time as that has been disposed of.

"We will appreciate your immediate acceptance, and we are taking steps to authorize a representative to take over the office immediately upon hearing from you. We will at that time advise you the name of the party to whom you shall turn over the records, etc.

"Very truly yours,
"Continental-Diamond Fibre Company
"(Signed) N. N. Wright
*Sales Manager*"

Upon appellant's return to Cleveland, appellee sent other employees to take possession of the office which appellant surrendered, voluntarily, according to testimony offered in behalf of appellee, and under threat of replevin, according to appellant's own testimony. There is consider-

able dispute in the evidence as to the circumstances surrounding the surrender of the offices. Appellant testified that when the letter of discharge was handed to him, the General Manager of appellee stated that they would send him his commissions to the end of the contract, and that the gross commissions would be net commissions so that financially he would not be so very badly off. He also testified that he talked to the treasurer of the company soon after his return from Chicago, and that when he objected to turning over the keys of the offices the treasurer said: "I can assure you, as an officer of the company, that surrendering your keys is not going to affect your legal status in any way, and while we have always been good friends and I hope we will remain that way, you know that if you refuse to give me the keys I would simply have to go over to the court house and get a replevin action and then I would have them."

Each officer denied the testimony as to himself. The General Manager testified that when he gave appellant the letter the latter stated that he had no particular objection to leaving the company if that was what the company wished; that he had various interests which, in the aggregate, had paid him a very satisfactory income and that his relationship with Continental in building up the Cleveland territory had been a losing proposition; that if the company wanted to release him and wanted to take possession of the Cleveland office that could be arranged. The treasurer said that while appellant did say he wished to discuss the situation regarding his surrender of the keys and possession of the office, and suggested that the company pay him a sum of money for completing the settlement of the contract arrangement to the end of 1932, he replied that he was without authority to negotiate a settlement, and such discussion would have to be taken up with the president of the company. He flatly denied saying to appellant in substance: "You have my assurance, as Treasurer of the Company, that you are entirely safe in turning this over, and that whatever rights you have, will be properly safeguarded by the Company. I don't like to see it, but if you would refuse to turn this over I would have to get a writ of replevin and take it over, and I hope you will not force me to do that."

After the surrender of the offices by appellant, he consulted with the president of

the company with a view to settling for a lump sum. That officer testified that he refused to make any such agreement, stating that they would continue to the end of the year with regard to his compensation, if any was due him. Appellant subsequently returned to Chicago and started up a new business, organizing the American Phenolic Corporation which dealt in molded bakelite sockets.

After the termination of the contract there was an exchange of letters with regard to the matter of compensation. The treasurer wrote in July, 1932, "* * * we will continue for the balance of the year to credit your account with commission on shipments made during the balance of this year to the territory previously handled by you. From the amount of the commissions so credited will be deducted the expenses covering salaries and all other operating expenses for sales made in this territory during the period until December 31. * * * As at the close of this year, December 31, 1932, the account will be stated setting forth the amount which you may owe the Company or the amount by which the Company may be indebted to you at that time under the terms of your contract. * * *" In reply, appellant wrote that the arrangement outlined was neither satisfactory nor in accordance with the understanding between the several members of the company and himself. He referred to the fact that the letter of May 23, 1932, terminating the sales contract, made no mention of debiting him with the expenses of his district except as to expense already incurred by him, and that when the general manager handed him that letter they discussed the matter and agreed that gross commissions would be net commissions except for the existing indebtedness. He protested the deductions of salaries and operating expenses then being paid in the district which had not been incurred or approved by him.

In February following, a new series of letters was exchanged between appellant and the treasurer, beginning with a request from appellant dated February 2, 1933, for a statement as to the report of the company to the Government in connection with his income tax return for the year 1932. In reply the treasurer wrote that they had reported the amount of $10,576 income, comprising commissions of $40,663, less expenses paid of $30,087. In reply, appellant asked in substance for a breaking down of these figures, stating that in past years the Collector had always asked for particulars as to items of salary, railway and traveling, office and clerical, hotel and entertainment and miscellaneous. The tone of each of the letters is very friendly, and there is no indication in any of a disagreement over the accounting between them. There is nothing in the letters to indicate that appellant did not expect to be charged with expenses, and there seems to be no reason for the incurring of expense other than the operation of the sales office.

The court found from the evidence that the contract consisted of the instrument of April 1, 1929, supplemented by the instrument of January 18, 1930, and further supplemented by the letter of December 14, 1931; that under its provisions, appellant was to have the exclusive agency for the Cleveland District, it being understood that he was to pay all expenses incident to the operation of the office for that district; that the parties acted under that contract until May 23, 1932, when there was delivered to appellant a letter notifying him of the termination of the contract, thereby validly terminating the contract as of December 31, 1932; that since the contract was validly terminated, appellant was not entitled to recover by way of damages or otherwise, any sum for or on account of such termination; that appellant did not suffer or sustain any damage by reason of the termination of the contract or by reason of any fault or default on the part of appellee; that appellee acted in good faith in terminating the contract; that on or about May 23, 1932, appellee assumed the operations of the Cleveland District, "it being the expressed intention of plaintiff and defendant that commissions, as provided in the contract, would be credited to plaintiff from May 23, 1932, to December 31, 1932; that the expenses of operating and the making of sales in the said 'Cleveland District' would be charged to plaintiff for said period; that if the commissions exceeded the expenses for said period, plaintiff would be credited with such excess, and if the expenses exceeded the commissions for said period, plaintiff would be charged and debited for the difference"; that no agreement was made on May 23, 1932, or at any other time between the parties that appellant was to receive commissions on sales made in the Cleveland District from and after May 23, 1932, without being charged and debited with the ex-

penses of its operation; .that appellant had been duly credited with the commissions for the period from May 23, to December 31, 1932, and appellee had charged appellant with the expenses of operation for the same period, and that such expenses exceeded the amount of commissions for the period; and that appellant had not proved his case in that the evidence did not show that his contract of employment was wrongfully breached or terminated by appellee and did not show that appellee was guilty of any breach of duty owing to appellant or that the latter was damaged by reason of any fault of appellee. The court therefore entered judgment for the defendant.

Many of the issues presented to us in the case at bar appear to have been presented to the Municipal Court of Chicago by a suit filed by the company against appellant here to recover from him the excess of advances to May 23, 1932, and expenses of operation of the office from then until December, 1932, over commissions earned between May and December, 1932. Certain pleadings in that suit were introduced as an exhibit by appellee, and were admitted by the court solely for the purpose of showing an alleged inconsistency between appellant's pleadings in the two suits. The record does not show what disposition, if any, has been made of that litigation.

The principal controversy between the parties arises over two questions, first, as to the validity of the supplemental contract of January 18, 1930, which appellant contends was without consideration, hence gave appellee no right to discharge him until the expiration of the term of the original contract; and second, as to the right of appellee to take over the business, charging appellant with all the expenses of its operation from May 23, to December 31, 1932. Appellant also contends that, regardless of the validity of the modification of January, 1930, no ground existed for his discharge in May, 1932, since he had complied with the provisions of the contract in every respect, while appellee argues that, under the terms of the supplemental contract, it was unnecessary for it to prove non-compliance on the part of appellant, provided it became dissatisfied with his volume of sales, and that as to that, it was the sole judge, provided only that it acted in good faith, as the trial judge found that it did.

■ Appellant, of course, admits that he lost money on his contract during the year

1931, and the first five months of 1932, until its termination. Nevertheless, he contends that it was still a valuable contract to him for the reason that he was then in a position to reduce his expenses substantially and still keep up his volume of sales—that up until that time he had been spending a great deal in building up his territory and could afford to spend his own money on it since he thought he had a long term contract upon which he could realize in the future. He contends that since the notice of May, 1932, was ineffective to terminate his contract, the contract remained in full force until the end of the year 1935 when the new business begun by him shortly after he left appellee's employ became sufficiently remunerative that he would have been unwilling to give it up to return to appellee's employ. He therefore submitted evidence as to appellee's sales and the commissions allegedly lost to him by appellee's wrongful termination of the contract to and including the year 1935, purporting to show damages totalling $186,345. This evidence is highly speculative. The only known factor used is the amount of the gross sales of the appellee for each of the years involved. Appellant assumes that a certain percentage of this business would have originated in his district, the percentage increasing from 28% in 1932 to 31% in 1934 and 1935—a wholly arbitrary figure so far as we are able to ascertain. Such percentage of business would have yielded him certain gross commissions, from the amount of which he subtracts expenses not exceeding $35,000 a year, leaving a total of $163,095 for the years 1932 to 1935, inclusive. To this he adds the commission on $100,000 of sales alleged to have been lost to the company each year through the discharge of a friend of his who took his business amounting to that figure to another company immediately upon his discharge. Such business would have added $33,250 to the commissions of appellant in the three and a half years, according to his computations. The District Court was justified in disregarding such testimony as proof of appellant's damages, and, in the absence of any better evidence, in holding that appellant had not proved his claim for damages, conceding for the moment that he had proved breach of the contract.

■ However, from our consideration of all the facts of this case we are convinced of the correctness of the District Court's conclusion that appellant did not

prove his case, in that the evidence did not show that the contract of employment was wrongfully breached or terminated by appellee or that appellant was damaged by reason of any fault of appellee. We do not consider it essential to the decision of the case that we determine the validity of the supplemental contract. It is difficult to find consideration for the modification—certainly the promise of indemnification for liabilities incurred under the original contract in case of its abrogation in accordance with the terms of the supplemental, furnishes no such consideration. However, contracts may always be terminated by mutual consent, and we think there is ample evidence to establish the fact of such mutual consent. While appellant apparently had not planned to give up the district and was quite surprised at the action of appellee's officers in notifying him of the termination of his contract, we think the oral evidence and the letters establish the fact that he acquiesced in its termination.

Moreover, we consider it a matter of some significance that the original written contract does not appear to have been treated by the parties at any time as the complete and inflexible statement of all relations between them. Appellant entered upon performance of his duties under it over two months before the written contract was even presented to him for his signature. The written contract made no reference whatever to the payment of expenses of the operation of the business under it, and yet no question was ever raised during the period of its performance by appellant as to his obligation to meet all such expenses—as stated in a letter written before appellant entered upon his duties but not again referred to. The contract was modified on at least two occasions in appellant's favor, the benefits of both modifications being accepted by him without objection. We refer to the provision for advancements under which he had received over $20,000 prior to the termination of the contract for carrying on the operations of his office, and the revision of the commission rates to provide a sliding scale so that in normal or good times the return would be about the same as under the original, but in periods of depression, it would provide for a greater return in proportion. That it appeared that other district managers received the same treatment seems to us irrelevant—their contracts are not before us and we are not called upon to interpret appellant's relationship with appellee in the light of facts involving other persons. While we do not wish to be understood as saying that these subsequent revisions in appellant's favor furnish consideration for the earlier revision in appellee's favor, we do say that they indicate the shifting, developing relationship between them, and lend some credence to appellee's testimony of the willingness of appellant's acceptance of the termination of the contract between them.

The fact of the losses appellant had suffered under the contract in 1931 and 1932 lends further credence to appellee's contentions. It is to be noted that even after the increase in the rate of commissions by the modification of the contract in December, 1931, appellee still made advances to appellant, the last, of $2,500 on May 2, 1932, shortly before the termination of the contract. Appellant's testimony as to retrenchments is not convincing—while he does point to a reduction of average monthly expenditures from $5,552 in 1931, to $4,098 for the four months of his operation in 1932, the fact remains that commission averages still remained substantially below expense averages. Appellant testified that he contemplated an annual expense rate of not to exceed $35,000 after 1932, but he presented no figures whatever in support of this estimate. We note from our study of the record that after the first month of his operation when expenses totalled $5,520, appellant's successor actually did succeed in reducing the monthly expense rate for the last half of the year 1932 below appellant's average—the average for the last six months amounting to $3,896, according to our computation from the figures of record. During this same period, the successor maintained a slightly better average of commissions—appellant's total for the five months of his operation in 1932 was $16,622, or a monthly average of about $3,324, while the total for the balance of the year was $24,015, or a monthly average of about $3,429. (These figures are not to be found in the printed record, but we have taken them from the amended statement of claim filed by appellee in its municipal court litigation, introduced as an exhibit in the case at bar.)

We find nothing of record to support the finding of the District Court that it was the *expressed* intention of the parties that commissions as provided in the con-

tract would be credited to appellant from May 23, 1932 to December 31, 1932, and that the expenses of operating and the making of sales in the district would be charged to appellant for that period, and that if commissions exceeded the expenses for the period appellant would be credited with such excess, while if expenses exceeded commissions, he would be charged with them. In view of the fact that the written contract of April 1929, made no reference to the payment of expenses, we think it may not be construed as expressly providing for deduction of expenses so that the letter of May 23, 1932, "you will be credited with compensation as provided by contract until the termination thereof" is a definite settlement of that question between the parties. However, as we have already pointed out, that contract did not purport to define the entire relationship between the parties. By earlier letter from appellee's president to appellant it had been clearly stated that appellant was expected to pay all the expenses of his district, and we think that either that provision must be read into the contract, or the contract must be construed with that provision in mind. Commission rates were adjusted to meet changing conditions, although the contract did not in terms make any provision for changes, nor did it provide for the allowance of advances such as were subsequently made to appellant. Hence, we are of the opinion, that while there was no *express* intention to deduct expenses from commissions, such intention can certainly be implied from all the circumstances which must be considered in deciding this case.

We are not convinced that appellee is entitled to collect from appellant the difference between commissions and operating expenses as held by the District Court. In fact, were we called upon in this appeal to pass upon the actual accounting between the parties, we should question many of the items of expense charged to appellant during appellee's seven months' operation of the office in his name. For instance, we note in appellee's itemized statement, many items arising in the Bridgeport office, and in view of the fact that Connecticut was never in appellant's district, we cannot understand why charges against him should arise there. Were the question before us, we would also be at a loss to understand why two contributions to the Cleveland Community Fund after he ceased management of the office and left Cleveland should be charged as office expense against him. However, the appeal here is from an adverse judgment in a suit for damages for breach of contract, and not for an accounting between the parties. Appellant has not challenged the accuracy of any figures presented by appellee, but rather denies the right to any deductions on account of expenses. Hence these questions are not before us. We agree with the District Court that he has not proved the breach or the damage, as charged.

Judgment affirmed.