[Civ. No. 14626.   Second Dist., Div. Three.   May 11, 1945.]

WEST COAST WINERY, INC. (a Corporation), Respondent, v. GOLDEN WEST WINERIES, INC. (a Corporation), Appellant.

C. Loy Mason and Shafer & Grimm for Appellant.

Lane & Lane for Respondent.

FOX, J. pro tem.—In its complaint plaintiff alleged four causes of action. The first count alleged a breach of contract based upon defendant's failure to return wines delivered by the plaintiff to the defendant upon an agreement of exchange; the second count alleged fraud in inducing the plaintiff to make the exchange agreement, in that the defendant fraudulently represented to the plaintiff that the defendant had a large contract for the delivery of wines from a wholesale winery, and from which wines the defendant would return to the plaintiff, within ten days or two weeks, the requisite wines pursuant to the exchange agreement; the third count alleged that the defendant converted the wines delivered by the plaintiff under the exchange agreement; and the fourth count alleged that defendant owed plaintiff $36 for work and labor in transporting wines between Roscoe, California, and Los Angeles, California.

The defendant admitted owing the $36 claimed in the fourth count, and the court found that there was no conversion under the third count.

The court found that the parties had entered into an agreement to exchange approximately 5,000 gallons of wine; that defendant had committed a breach of its agreement of exchange in that it had failed and refused to return to the plaintiff 4,321 gallons of wine as agreed, and that by reason of such breach plaintiff was entitled to recover as damages the retail price of said wine, viz., $1.54½ per gallon. The court also found in favor of the plaintiff on the second count. From the ensuing judgment defendant appeals.

Defendant's arguments may be reduced to two questions: (1) was the transaction a sale or an exchange; and (2) did the court apply the proper measure of damages in allowing plaintiff the retail selling price?

It is defendant's contention that the transaction was

a sale by the plaintiff who had both a wholesale and a retail place of business, to the defendant who operated only as a wholesaler, at the wholesale ceiling price of 45 cents per gallon. The court, however, found against the defendant on this issue and there is ample evidence to support such finding. Mr. Lotito, an officer of the plaintiff corporation and who represented plaintiff in the transaction, testified that he called defendant's place of business and told them that his company had a large quantity of port and more tokay than it needed and that it would like to get some white wines, muscatel, white port and angelica. Later, Mr. Joseph Heitler, president of the defendant corporation, telephoned Mr. Lotito and asked him to come to defendant's place of business. There, Mr. Heitler said to Mr. Lotito, according to the latter's testimony, " 'You have port and tokay, and I have some orders to fill, and I have a contract with Bear Creek Winery Association, and you wanted muscatel and sherry, and white port; if you give me this wine, in about a week or ten days, just as soon as the Bear Creek ships the sherry, I will be willing to return it to you, because I have a contract with them.' So I, in good faith, made the deal; that is, I took his word. I took his word that he had a contract with the Bear Creek people, that he would return my wine in exchange for a different flavor I gave him,—— that he would return it to be back in about a week or ten days.'' This testimony is corroborated by the witness Sidney Witkowski who was present at the conversation between Mr. Heitler and Mr. Lotito. Further support for the trial court's determination that the transaction was an exchange is found in plaintiff's exhibits 1 and 2. In exhibit 1 is plaintiff's invoice No. 14605 which shows the delivery to defendant from plaintiff of "12-50 gal. bbl. Port, 593 gal.'' Across the face of the invoice is written the following "to be exchanged for Light Fortified Wine.'' In the lower right hand corner of the invoice are two initials which Mr. Lotito testified are "J. H.'' and stand for Joseph Heitler. Invoice No. 14606, also a part of plaintiff's exhibit 1, shows the delivery to defendant from plaintiff of "10-50 gal. bbl. 488.50 gal.) Port.'' Following the word "terms'' the word "Exchange'' is written. A third invoice is contained in this exhibit which shows the delivery to defendant from plaintiff of 3,965 gallons of tokay and port in bulk. These deliveries were made pursuant to the deal between plaintiff and defen-

dant. There are no figures on either of these invoices under the headings : Price, amount and total. If the transaction between the parties had been a sale the price and amount would undoubtedly have been stated on the invoices. The absence of any figures under these headings tends to support the trial court's determination that the transaction was an exchange and not a sale. In plaintiff's exhibit 2 is invoice No. 1145 which shows a delivery from defendant to plaintiff of "6 barrels—50 gallons regular wine *to apply on replacement.*" (Italics added.) This was part of the wine that was returned by the defendant to the plaintiff under the exchange agreement according to the testimony of Mr. Lotito. No price was stated on the invoice for this wine. Mr. Heitler, however, testified that defendant was to pay the plaintiff for the wine received from plaintiff "according to ceiling market price to wholesaler." This, of course, only created a conflict in the evidence which the trial court has resolved in favor of the plaintiff. Such determination is binding on appeal. (*Crawford* v. *Southern Pac. Co.* (1935), 3 Cal.2d 427 [45 P.2d 183] ; *Estate of Bristol* (1943), 23 Cal.2d 221 [143 P.2d 689].)

■ The court awarded plaintiff damages on the basis of the retail sale price (excluding taxes) of the wine. If such wine was not available on the market plaintiff's loss of profits may be a proper element in fixing its damage. However, when loss of profits is a factor in fixing damage the defendant is required to pay the plaintiff only the net profits, not gross profits, or gross selling price. The rule applicable in such a situation is stated in *Coates* v. *Lake View O. & R. Co.* (1937), 20 Cal.App.2d 113 [66 P.2d 463]. It is there said (p. 119) : "Gross profits are really not profits at all, for they generally refer to the excess in the selling price over the cost price without deducting the expenses of resale and other costs of doing business. (See *Buie* v. *Kennedy,* 164 N.C. 290 [80 S.E. 445].)

"To allow plaintiff to recover a judgment based in part on his gross profits would result in his unjust enrichment. If he is entitled to recover at all, because of his loss of profits, such recovery must be confined to his net profits. Net profits are the gains made from sales 'after deducting the value of the labor, materials, rents, and all expenses, together with the interest of the capital employed'. (Black's Law Dictionary,

p. 1439.)'' (See, also, *Carrier* v. *Piggly Wiggly of S. F.* (1936), 11 Cal.App.2d 180 [53 P.2d 400].) Here, to allow plaintiff to recover the retail sale price of the wine would be to put it in a better position than it would have been in if defendant had returned the wine according to the exchange agreement. The wine plaintiff furnished defendant was in bulk. That which defendant returned was likewise in bulk. Presumably, if the defendant had returned the remaining 4,321 gallons it, too, would have been in bulk. It would then have been necessary for plaintiff in order to sell it at retail to provide bottles or other containers, the cost of which would no doubt amount to a substantial figure. The labor necessary to bottle or otherwise package this quantity of wine for retail sale would also be an important item. These two items are mentioned by way of illustrating the proposition that to allow plaintiff the retail price of the wine as damage is to allow it to be reimbursed for items of expense that it never incurred. It was therefore error to use the retail price as the measure of plaintiff's damage.

█ If, however, on a retrial it should be determined that defendant did not know, and under the circumstances should not have known, that plaintiff was also licensed as a retailer and was intending to sell the wine at retail, then damage should be awarded on the basis of the wholesale price. In such circumstances, it is said in *California P. Mfg. Co.* v. *Stafford P. Co.* (1923), 192 Cal. 479, at p. 483 [221 P. 345, 32 A.L.R. 114], that ''It is a well-settled rule that the damages that can be recovered for any breach of contract are only such as may reasonably be supposed to have been in the contemplation of the parties at the time of entering into the agreement, as the probable result of a breach.'' (To the same effect, see, also, *Lacy Mfg. Co.* v. *Gold Crown Mining Co.* (1942), 52 Cal.App.2d 568, 574 [126 P.2d 644] ; Civ. Code, § 3300.) ''This rule does not mean that the parties should actually have contemplated the very consequence that occurred, but simply that the consequence for which compensation is sought, must be such as the parties may be reasonably supposed, *in the light of all the facts known, or which should have been known to them,* to have considered as likely to follow, in the ordinary course of things, from a breach. . . .'' (*Hunt Bros. Co.* v. *San Lorenzo etc. Co.* (1906), 150 Cal. 51, 56 [87 P. 1093, 7 L.R.A.N.S. 913].)

It is unnecessary to consider other questions discussed by counsel in their briefs.

The judgment is reversed with directions to retry only the issue of damages.

Shinn, Acting P. J., and Wood (Parker), J., concurred.