DISTILLERS DISTRIBUTING CORPO-
RATION, Appellant,

v.

J. C. MILLETT CO., a Corporation, d/b/a
Key Distributing Co., Appellee.

No. 17548.

United States Court of Appeals
Ninth Circuit.

Nov. 29, 1962.

Rehearing Denied Jan. 2, 1963.

Philip S. Ehrlich and Irving Rovens, San Francisco, Cal., for appellant.

J. Albert Hutchinson and Leon A. Blum, San Francisco, Cal., for appellee.

Before ORR, HAMLEY and JERTBERG, Circuit Judges.

ORR, Circuit Judge.

We have before us a second appeal in this case. The first resulted in a reversal, in part, of the trial court's judgment with directions to it to permit amendment of paragraph IX of the complaint and further, that the cause proceed on this court's interpretation of paragraph 11 of the contract involved. Amendment of paragraph IX was made as directed and the trial court proceeded to hear and determine the case according to the direction of this court. It rendered judgment in favor of appellee J. C. Millett Co. on the causes of action presented by amended paragraph IX and paragraph 11.

■ In this appeal appellant asserts that the evidence is insufficient to support the findings. Taking up the first cause of action, we find that the trial court had before it in support of its judgment the following evidence: that appellee is a wholesaler of alcoholic beverages in the State of California and that appellant is a distilled spirits manufacturer's agent engaged in the sale of alcoholic beverages to wholesalers; that appellant and appellee entered into a contract whereby appellee was to distribute appellant's distilled products. Appellee alleged that appellant breached its contract on or about July 1, 1952 by discontinuing promotional activities in support of appellee's efforts in the resale of Calvert products while continuing such activities for the benefit of appellee's competitors. Such allegation, if true, constitutes a "clear breach of paragraph 6 of the contract in which the agent [appellant] agrees to 'promote the sales of its products', a provision necessarily implying an agreement that the agent would not engage in activities hurtful to the Distributor [appellee]." J. C. Millett Co. v. Distillers Distributing Corp., 258 F.2d 139, 144 (9th Cir., 1958).

Appellee's principal witness, an ex-specialty man of appellant named Lewis, testified that he was instructed to withdraw all promotional support from appellee. Lewis' duties included booking windows, showing Calvert's national advertising material, getting better shelf placement for Calvert products in package stores and bars and "high spotting" (meeting a wholesaler's salesman at a particular retail outlet and encouraging the sale of Calvert's products). After receiving these instructions, he ceased "high spotting" work with appellee's salesman, and on his independent calls to retailers he de-emphasized appellee by inflection of his voice and other tricks of the trade.

■ There was evidence to the contrary but the trial court evidently credited the testimony of Lewis. Such was its province and we could not disturb its finding in that respect unless the evidence could be said to be so inherently improbable as not to be worthy of belief, which it is not. Lewis' testimony was substantial and sustains the finding of the trial court.

The breach of contract thus found occurred during the period of July 1, 1952 through December 31, 1952. In determining the amount of damages resulting from such breach, the trial court found that the appellee was prevented from making sales of appellant's products to the extent of 2350 cases, which was the difference between the number of cases of Calvert products sold in the last six months of 1951 and the last six months of 1952. The trial court then determined that appellee was entitled to a markup from the proceeds of 2350 cases over the cost of acquisition of $6.08 per case or $14,288.00. From this figure was subtracted $2,414.67 (discounts to purchasers) and $3,957.77 (commissions to salesman), leaving a balance of $7,915.56.

■■ Once a breach of contract has been shown, California law, which governs in this case, applies a liberal rule in allowing a court or jury to determine the amount of damages. Hunt Foods v. Phillips, 248 F.2d 23, 33 (9th Cir., 1957); California Lettuce Growers v. Union Sugar Co., 45 Cal.2d 474, 289 P.2d 785, 49 A.L.R.2d 496 (1955). In awarding damages for loss of profits, net profits and not gross profits are the proper

measure of recovery. Olcese v. Davis, 124 Cal.App.2d 58, 268 P.2d 175 (1954); West Coast Winery v. Golden West Wineries, 69 Cal.App.2d 166, 158 P.2d 623 (1945). But where the operating expenses are fixed, gross profits may be awarded as representing net profits. Tomlinson v. Wander Seed and Bulb Co., 177 Cal.App.2d 462, 2 Cal.Rptr. 310 (1960); Walpole v. Prefab · Mfg. Co., 103 Cal.App.2d 472, 230 P.2d 36 (1951). Harry Kenney, controller for appellee from 1949 to 1958, testified that appellee's operating expenses were fixed and would not be substantially reduced because of the loss of the Calvert line. This uncontradicted testimony sustains the trial court's implicit finding that appellee's expenses were fixed and would not have increased had the contract not been breached. Automatic Vending Co. v. Wisdom, 182 Cal.App.2d 354, 6 Cal. Rptr. 31 (1960); Quist v. Zerr, 12 Wash. 2d 21, 120 P.2d 539 (1941).

■ According to section 3358 of the Civil Code of California a plaintiff is not entitled to recover a greater amount in damages for breach of an obligation than he could have gained by full performance thereof on both sides. Appellant contends that this provision prohibits appellee from recovering a greater net profit on the loss of Calvert sales than its net profit on Calvert sales in 1951. We are not aware of a California rule which limits the amount of recovery to the net profit figure of past years. Section 3358 of the Civil Code of California must be read with section 3300 (general measure of damages for breach of contract), and in so doing, the result is reached that the plaintiff is placed in the same position he would have been had the defendant performed the contract. Wickman v. Opper, 188 Cal.App.2d 129, 10 Cal. Rptr. 291 (1961); Phalanx Air Freight v. National Skyway Freight Corp., 104 Cal.App.2d 771, 232 P.2d 510 (1951). Had appellant performed the contract, appellee would have sold approximately 2350 more cases of Calvert products during the last half of 1952 and made a net profit of $7,915.56. This method of

computation was followed by the trial court and is correct.

■ Appellee in its third cause of action alleged a breach of paragraph 11 of the contract, which reads:

"11. This contract shall be effective for a period of ten months from March 1, 1952. If Distributor desires to renew the contract, he shall so notify Calvert not less than 30 days before December 31, 1952"

Appellee gave notice to renew, but was advised by appellant that the agreement terminated on December 31, 1952 and would not be extended or renewed.

■ In reversing the trial court's finding made in the first trial that this provision did not give appellee an option to renew, this Court found applicable the rule that a question of doubt in interpreting a written contract is to be construed against the party preparing it. The trial court in the instant case applied that rule. We think it was required to do so. The record does not contain sufficient evidence to resolve the interpretation of the contract as contended for by appellant.

■ Appellant further argues that the trial court erred in finding that the renewal period was for one year because a general covenant to renew implies an additional term equal to the first term. Achen v. Pepsi Cola Bottling Co., 105 Cal.App.2d 113, 233 P.2d 74 (1951); Penilla v. Gerstenkorn, 86 Cal.App. 668, 261 P. 488 (1927). Notwithstanding the fact that the written contract was for a period of ten months, the circumstances surrounding the dealings between the parties show a year to year operation. The parties had been contracting for a period of ten years without a written contract. A dispute arose because appellant contended that it had a right to terminate the contract at any time. Negotiations resulted in the ten months contract. It is significant to note that the ten months period terminated at the end of the year and the option to renew was to be exercised on the first of the year. These and other surrounding circum-

stances are sufficient to uphold the trial court's determination that the contract was intended to cover a period of one year. See Universal Sales Corp. v. Cal. Press Mfg. Co., 20 Cal.2d 751, 128 P.2d 665 (1942).

In determining appellee's loss of profits because of this breach of contract, the trial court applied the same method of computation as it did when determining damages under the first cause of action. In addition, appellee was awarded damages for its increased expense caused by purchasing, handling, storing, and returning 765 cases of merchandise to appellant. Again we repeat that under applicable law a trial court has wide discretion in determining the amount of damages to award for breach of contract. Csordas v. United Slate Tile & Composition Roofers, 177 Cal. App.2d 184, 2 Cal.Rptr. 133 (1960); Milton v. Hudson Sales Corp., 152 Cal.App. 2d 418, 313 P.2d 936 (1957); Ross v. Frank W. Dunne Co., 119 Cal.App.2d 690, 260 P.2d 104 (1953). We cannot say the trial court abused that discretion in its assessment of damages.

Affirmed.