**OLIN'S TIRE SERVICE, INC., W. O. Williams and Geraldine S. Williams,**
**Appellants,**

v.

**UNITED STATES RUBBER COMPANY,**
**Appellee.**

No. 22631.

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1967.

S. Gunter Toney, Tallahassee, Fla., for appellants.

Harry Lewis Michaels, Tallahassee, Fla., for appellee.

4. 15 WH Cases 862, 47 Labor Cases, ¶ 31,402.

Before WISDOM, BELL and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This is an appeal from the granting of appellee's motion for partial summary judgment against Olin's Tire Service, Inc. The order of the district court granting the motion is set out in full in the margin.[1]

The original complaint was filed by Olin's against United States Rubber Company, alleging that U.S. manufactured and consigned to Olin's tires and tubes which Olin's sold to the public, that U.S. warranted them to be of merchantable quality and fitness for the purpose of resale to the public (whether the warranty was express or implied was not alleged), and that the warranty was breached.[2] It was alleged that Olin's was required to, and did, adjust U.S. tires and tubes for customers of the parties, that is replaced defective tires and tubes, and that the tires supplied by U.S. were defective, resulting in unusually high and excessively numerous adjustments. All damages claimed were stated to have occurred as a proximate result of U.S.'s breach of warranties; included as damages were amounts described as loss in adjusting tires, loss of past profits and loss of future profits.

U.S.'s answer admitted the existence of the warranty on new tires but denied the breach.

The differences leading to this suit arose from the following course of events, as established by the data available to the court for summary judgment purposes.[2a] Olin's is a corporation formerly known as Royal Tire Service. Royal was the franchised distributor of U. S.'s tires, tubes and other products in the Tallahassee, Florida, area. It was heavily indebted to U.S. W. O. Williams and wife Geraldine Williams entered into negotiations with representatives of U.S. for the purpose of considering the advisability of accepting the franchise distributorship. Appellants assert that during the negotiations U.S. made two vital representations—that U.S.'s products were equal in quality to those of its leading competitors, and that adjustments and claims handled by a distributorship normally could be expected not to exceed 2% of new tire sales.

The Williamses acquired all capital stock of Royal. Contemporaneously, or nearly so, they executed on behalf of Royal U.S.'s form "Distributor's Consignment Agreement" and numerous other documents of a security nature. The Williamses individually entered into many other security undertakings for the benefit of U.S.

1. "This cause coming on to be considered on respective motions of plaintiff, Olin's Tire Service, Inc., and defendant, United States Rubber Company, for partial summary judgment and the Court having considered the entire file in this proceeding, including all pleadings and affidavits in support of said motions, and the Court finds that the contract between these parties as it relates to new Royal brand tires and tubes provides for the reimbursement of all customer claims handled by the consignee. Since it has been stipulated before this Court that the plaintiff has been fully compensated by the defendant for all adjustments made on new Royal brand tires and tubes, it is the further finding of the Court that any damages claimed for loss of reputation are to be considered as special damages and as such too specula-

tive for allowance in a suit of this nature regardless of whether the transactions involved are considered as sales or consignments.

"Upon this issue, the Court concludes that there is no genuine issue as to any material fact and that defendant, United States Rubber Company, is entitled to partial summary judgment as a matter of law, and it is, therefore, under the provisions of Federal Rules of Civil Procedure, Rule 56, hereby ORDERED: (etc.) * * *."

2. Breach of warranty on recap rubber material also was alleged. This issue was tried to a jury and is not involved in this appeal.

2a. Of course, in a trial on the merits the facts may be found to be different.

The Williamses began operating Royal. They experienced many more customer adjustments than had been expected. In 1961 adjustments ran 21.5% of new tire sales; in 1962, 36.7%; in 1963, 38.2%.

Williams complained repeatedly to U.S., and sought to discontinue as distributor, but was told the problem with the tires was from separation caused by heat, that U.S. had changed specifications and the problem had been corrected. Williams, fearing acceleration of the indebtedness, continued Olin's as distributor.

Appellants fell into default on their obligations to U.S., which began pressing them. Olin's then filed this suit. It admitted indebtedness to U.S. on notes and an account. U.S. counterclaimed on the notes and the account and for attorney fees and crossclaimed against the Williamses as guarantors of the same obligations.

Olin's and U.S. moved for summary judgment. The court granted U.S.'s motion except as to Olin's claims concerning defective recap material. (See footnote 2 supra). Under its disposition of the case the district court did not reach the issue whether the arrangement between Olin's and U.S. for new tires was consignment or sale or conditional sale or a transfer of title with a retention of security interest.

■ The effect of the court's ruling was to deny Olin's any recovery on its suit for breach of warranty as to new tires, not on the ground that the warranty was not made (for its existence is admitted), nor on the ground that it was not breached (for that is a controverted material issue of fact), but by a two-pronged determination confined to Olin's claims for damages for breach of warranty. The court made a finding that the contract provided for reimbursement [to Olin's] for all customer claims handled and that it had been stipulated that Olin's had been fully compensated for all adjustments made. The form agreement between the parties (re-executed from time to time and amended and renewed from time to time) obligated Royal [¶19 (f)] to:

"Handle Customer Claims involving the Consignor's merchandise in accordance with the terms of its policy in effect from time to time for handling Customer Claims."

Handling of adjustments, and payment to Royal for handling, were provided for as follows:

"18. The Consignee shall refer, in accordance with the Consignor's established procedure, all Customer Claims or replacement of tires to the Consignor and shall await the Consignor's approval and instructions before making any adjustment or replacement on behalf of the Consignor. When approved Customer Claims are handled for the consumer through the Consignee, the Consignor will allow the Consignee 10% of the price of the Customer Claim to the consumer, the Consignee to pay transportation charges; when such Customer Claims are handled through associate dealers, the Consignor will allow the Consignee 10–5% of the price of the Customer Claim to the consumer, suitable documents being presented as proof showing the 10% allowance is passed to the associate dealer."

This payment provision is substantially what appellants say was represented to them (10% of recovery from the customer but with a $1.00 minimum). We are unable to find in the record the stipulation referred to by the district court and neither party points us to it. However, assuming the stipulation was entered into, as we construe the court's order what is meant is that U.S. has reimbursed Olin's for what Olin's has paid to customers on claims and has paid to Olin's for handling claims the amounts which U.S. agreed to pay. We agree with Olin's that this does not dispose of its claim for losses suffered in having to make an excessive number of adjustments. Olin's is asserting that the agreed compensation for handling adjustments was less than the cost to it of handling adjustments, that it bargained

to make adjustments at the agreed compensation and thereby was bound to absorb as a cost of doing business any excess of actual cost of handling adjustments over compensation to it for handling adjustments, but to the extent (and only to the extent) that total adjustments did not exceed the represented ceiling of 2% of new tire sales. Olin's has presented considerable accounting data to show actual cost to it of making adjustments, credits received from U.S., and the alleged loss suffered by absorbing the excess on those adjustments beyond the 2% ceiling.[3]

■ Olin's claimed loss of profits, past and future. We assume this is what the district court referred to as loss of reputation. Olin's set out at length in answer to interrogatories its method of computing, and its actual computation of, past lost profits by showing 1959 new tire sales and the decline each year thereafter, and applied percentage of gross profit on new tire sales against the decline. The computations did not give reasons for the decline; that information was not sought by the interrogatories. Whether Olin's can produce evidence to tie decline in sales to defaults or breaches by U.S. so as to comply with standards of Florida law as to proof of loss profits[4] is a matter which was not presented to the court by either side on the motion for summary judgment.

■ The same analysis applies to the claim for future profits with the additional factor that Olin's must produce evidentiary support for its projection of future tire sales.

We need not enter into the fray carried on in briefs of whether a warranty may be implied under the arrangement between Olin's and U.S. As the pleadings now stand Olin's has alleged that the tires were warranted and U.S. has admitted that they were.

■ U.S. urges that as a matter of law the parole evidence rule (and, inferentially, principles of integration of contracts) require that no consideration may be given to the alleged misrepresentations of normal volume of adjustments. Since we hold that summary judgment should not have been granted, these contentions can most appropriately be decided by the trial court.

The Williamses joined in the notice of appeal to this court. However, entry of judgment against them and in favor of U.S. on the cross-claim of U.S. was not contested, and they claimed no relief against U.S. The judgment against them is to be affirmed.

The contention of Olin's that summary judgment should have been entered in its favor is without merit and does not require discussion.

Judgment of United States Rubber Company against W. O. Williams and Geraldine S. Williams is affirmed. Judgment of United States Rubber Company against Olin's Tire Service, Inc., is reversed and remanded for further proceedings consistent with this opinion.

---

3. Claims handled by Olin's included those on tires sold to the consumer by other U.S. dealers. The damages claimed on these adjustments may sound in breach of the contract for handling adjustments rather than breach of warranty on tires furnished to Olin's and sold to the public by Olin's, or may sound in misrepresentation. But there is no need for us to attempt to unravel here this matter which can be thrashed out by pleadings and pretrial order in the district court.

4. In a diversity action state substantive law governs as to damages. Distillers Distrib. Corp. v. J. C. Millett Co., 310 F.2d 162 (9th Cir., 1962). Subject to the parties showing the district court otherwise on information not before us it appears that under applicable conflict of laws rules the proper choice of law is that of Florida. See Florida Builders, Inc. v. Stephenson Tile, Inc., 167 So.2d 58, 59 (Fla.Ct.App.1964). Compare Butler v. Mirabelli, 179 So.2d 868 (Fla.Ct. App.1965); Miami Beach Lerner Shops, Inc. v. Walco Manufacturing, 106 So.2d 233 (Fla.Ct.App.1958).